**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACK SPITZER, as Trustee of the Max | : | CIVIL ACTION |
| Jones Family Trust u/a/d July 2, 2008, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 12-5910 |
| | : | |
| THE LINCOLN NATIONAL LIFE | : | |
| INSURANCE COMPANY, | : | |
| Defendant. | : | |

Goldberg, J.                                                                                   July 29, 2013

## MEMORANDUM OPINION

This action arises out of Defendant's alleged failure to pay $20,000,000 in proceeds from two life insurance policies purchased by Plaintiff. Presently before the Court is Plaintiff's motion to remand and request for attorneys' fees and costs.[1] For the reasons set forth below, the motion to remand and request for attorneys' fees and costs will be granted.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On September 27, 2012, Plaintiff Jack Spitzer, as Trustee of the Max Jones Family Trust, filed a complaint in the Philadelphia County Court of Common Pleas against Defendant Lincoln National Life Insurance Company ("Lincoln Life"). Plaintiff's three-count complaint alleges breach of contract, fraud and bad faith arising out of Lincoln Life's failure to pay the proceeds of two $10,000,000 "Flexible Premium Adjustable Life Insurance Policies." On October 17, 2012, Lincoln Life removed the matter to this Court, invoking diversity jurisdiction.

---

[1] On July 25, 2013, Defendant filed a motion to withdraw its opposition to the instant motion. (Doc. No. 41.) Because our ruling and memorandum opinion were substantially drafted at that time, and because the parties still dispute the appropriateness of awarding Plaintiff the attorneys' fees and costs associated with the removal, we will deny Defendant's motion to withdraw.

On November 1, 2012, Plaintiff filed a motion to remand contending that the forum defendant rule requires that this case be remanded to the Philadelphia County Court of Common Pleas.  More specifically, Plaintiff argues that because Lincoln Life's principal place of business is located in Radnor, Pennsylvania, Lincoln Life is a citizen of Pennsylvania and was therefore precluded from removing to this Court on the basis of diversity jurisdiction.  Plaintiff also seeks attorneys' fees and costs associated with the removal.

On November 15, 2012, Lincoln Life filed its response in opposition to Plaintiff's motion.  On December 20, 2012, after a telephone conference, the Court granted Plaintiff's request for limited discovery on the motion.  The parties thereafter submitted supplemental briefs on February 15, 2013.  The matter is now ripe for disposition.

## II.    LEGAL STANDARD

A case may be remanded to state court where there was a defect in the removal procedure.  See 28 U.S.C. § 1447(c).  A removal is procedurally defective if, among other things, it violates the forum defendant rule.  Swindell-Filiaggi v. CSX Corp., 2013 WL 489015, at *1 (E.D. Pa. Feb. 8, 2013).  Under the forum defendant rule, "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  Where the defendant is a corporation, it is deemed a citizen of any State in which it has been incorporated and of the State where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

In considering a motion to remand, a court should strictly construe the removal statute and resolve all doubts in favor of remand.  Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d

Cir. 1987)). The removing party bears the burden of showing that it has complied with all substantive and procedural removal requirements. Lewis v. Lycoming, 2012 WL 2422451, at *4 (E.D. Pa. June 27, 2012) (citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).

## III.   DISCUSSION

### A.      Remand

The central issue before us is whether Lincoln Life has met its burden of showing that its principal place of business is in a state other than Pennsylvania.[2] A corporation's principal place of business is determined by locating the corporation's "nerve center"—that is, "the place where a corporation's officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 130 S.Ct. 1181, 1192 (2010). The nerve center "is not the state where the corporation conducts most of its business activities, but rather the place within the state from which it directs, controls and coordinates those activities, usually its headquarters." Brewer v. SmithKline Beacham Corp., 774 F. Supp. 2d 720, 725 (E.D. Pa. 2011) (citing Hertz Corp., 130 S. Ct. at 1193). As "place" is used in the singular, a corporation can only have one principal place of business. Id. at 1193. Where, as here, the corporation at issue is a subsidiary of another company, the principal place of business inquiry is evaluated without regard to the citizenship of the parent corporation. Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp., 461 F.2d 1140, 1142 (3d Cir. 1972); Lewis v. Lycoming, 2012 WL 2422451, at *5 (E.D. Pa. June 27, 2012).

---

[2] Because it is undisputed that Plaintiff is a citizen of New York, this Court's subject matter jurisdiction has not been challenged.

In support of their respective positions, the parties point to the following relevant facts.[3] Lincoln Life is a subsidiary of the Lincoln National Corporation ("Lincoln National"). It is a separate entity from Lincoln National and is incorporated in the state of Indiana. The company's corporate records are located and maintained in Fort Wayne, Indiana. (Smith Dep. 19:3-6, Jan. 28, 2013.)

Lincoln Life's operations are conducted at four primary office locations, each administering different insurance products: individual life insurance is handled by the Greensboro, North Carolina office; individual annuities are handled by the Fort Wayne, Indiana and Hartford, Connecticut offices; retirement plan services are handled by the Fort Wayne, Indiana and Greensboro, North Carolina offices; and the group life, disability, dental and vision insurance is handled by the Omaha, Nebraska and Hartford, Connecticut offices. These divisions are business units, rather than separate corporate units, of Lincoln Life. The divisions function through four "business owners" based outside of Pennsylvania who are principally responsible for the direct oversight and control of their respective division. However, none of the above individuals has authority to direct, control or coordinate the activities of the other business owners. In fact, the only people who have the authority to direct, control and coordinate the activities of the four business owners are the most senior management of Lincoln Life. (Smith Aff. ¶¶ 5-13; Smith Dep. 122:25-123:22, 125:13-126:4.)

Lincoln Life's senior management consists of its president, the executive vice presidents and the senior vice presidents. Out of its thirty-one most senior officers and managers, twenty-

_____

[3] We note that the parties point to other facts besides the ones noted. In particular, Lincoln Life cites to several facts concerning, inter alia, the amount of operations that take place in its Fort Wayne, Indiana office; the amount of employees who carry out day-to-day operations in its Greensboro, North Carolina office; the amount of senior vice presidents located in Indiana; and the location of the last meeting of Lincoln Life's board of directors. (Def.'s Supp. Br. 4-5, Doc. No. 25.) These facts were also considered in reaching our determination.

five are located in Radnor, Pennsylvania. These officers include Lincoln Life's president, chief investment officer, treasurer, chief marketing officer, chief human resources officer and chief financial officer. (Smith Dep. 22:9-22, 24:12-16, 25:12-15, 61:10-17, 64:20-23, 109:4-12,110:12-14, 111:16-21, Ex. P-18.)

Despite the fact that the vast majority of its top leadership and executive management are based in Radnor, Lincoln Life maintains that the evidence establishes that its principal place of business is not in Pennsylvania.[4] Lincoln Life asserts that, with regard to its individual life insurance section—the division relevant to this suit—direction, control and coordination emanate from its Greensboro, North Carolina office. In addition, Lincoln Life argues that the reality of its corporate structure is that its business is run from Greensboro <u>and</u> Fort Wayne, Indiana, and that if the Pennsylvania offices did not exist, the individual life insurance business would proceed in its normal course. Further, Lincoln Life urges that any references to Lincoln National's executive management team and its Radnor, Pennsylvania headquarters are misplaced as they pertain to Lincoln National, not Lincoln Life. (Def.'s Resp. Br. 8-10, Doc. No. 9; Def.'s Supp. Br. 2, 3, 4, 8-9, Doc. No. 25.)

For the following reasons, we disagree with Lincoln Life's position. First, Lincoln Life's initial assertion that each of its four divisions maintains a separate nerve center is contrary to the United States Supreme Court's clear dictate that the principal place of business is a single

---

[4] Lincoln Life has vacillated on its position of where its principal place of business is actually located. In its Notice of Removal, Lincoln Life listed its principal place of business as Fort Wayne, Indiana. (Doc. No. 1, ¶ 8.) In its response in opposition to Plaintiff's motion to remand, Lincoln Life stated that its principal place of business should have been listed as Greensboro, North Carolina. Lincoln Life explained that Greensboro was the "more accurate" location because that is where the corporate division of the insurance product at issue (individual life insurance) is based. (Def.'s Resp. Br. 2, n.2, 4-5, Doc. No. 9.) Finally, in its supplemental briefing, it appears that Lincoln Life is asserting that Fort Wayne, Indiana is the corporation's principal place of business. (<u>See</u> Def.'s Supp. Br. 4.)

location.  While it may be that Lincoln Life's life insurance operations are based in Greensboro, the relevant fact is not the location of individual divisions, but rather the center of <u>overall</u> control and direction of the corporation.  <u>See</u> <u>Hertz Corp.</u>, 130 S. Ct. at 1194; <u>see</u> <u>also</u> <u>Bruesewitz v. Wyeth Corp.</u>, 2006 WL 782437, at *3 n.1 (E.D. Pa. Mar. 27, 2006) (noting that "a corporation's unincorporated division is not an independent entity for diversity purposes").  If we were to accept Lincoln Life's position that each of its divisions maintains its own nerve center, its principal place of business would be interchangeable, depending on which of its divisions is implicated.

Second, Lincoln Life's contention that its business is run from Greensboro <u>and</u> Fort Wayne misconstrues <u>Hertz</u> and ignores the undisputed facts.  As previously discussed, a corporation can only have one principal place of business.  Thus, Greensboro and Fort Wayne cannot both be Lincoln Life's nerve center.  In addition, finding that one of these divisions is Lincoln Life's principal place of business would necessarily imply that that respective office controls all of the other Lincoln Life divisions.  This is simply not the case as the evidence of record indicates that the divisions operate semi-autonomously.  Moreover, Lincoln Life's corporate designee conceded that overall coordination and control of the four business divisions is administered by Lincoln Life's senior management, the majority of whom are located in Radnor.  (Smith Dep. 125:21-126:4.)  Therefore, we cannot, on this basis, find that either the Greensboro or Fort Wayne office operates as the "brain" of Lincoln Life.

Third, Lincoln Life's argument that Radnor cannot be its principal place of business because the "entire lifecycle of an individual life insurance policy" occurs outside of Pennsylvania is also unpersuasive.  The <u>Hertz</u> Court recognized that application of the nerve center test may cause seemingly anomalous results.  "For example, if the bulk of a company's

business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." Hertz Corp., 130 S. Ct. at 1194. The Court noted that the possibility of having such results is the price the legal system must pay to have a clear rule. Id. at 1194. The Hertz rule is that the nerve center is the "place where the corporation's high level officers direct, control, and coordinate the corporation's activities." Id. at 1186 (emphasis added). This test focuses on the location of the executives in control of the corporation, not the lower-level employees carrying out the work of each of the corporation's divisions. Thus, in the instant case, even though the day-to-day decisions regarding the different insurance divisions are located in Greensboro, Fort Wayne, Hartford, and Omaha, these divisions are still subordinate to the umbrella leadership of officers primarily located in Radnor.

Finally, that there is overlap between the officers of Lincoln Life and Lincoln National does not change the fact that the larger part of the senior management of Lincoln Life—who are the only people with authority over the activities of the four division owners—are located in Radnor. Lincoln Life's attempt to convince us that Plaintiff was conflating the two corporations is, at least on this basis, disingenuous.

In sum, based on the evidence of record, we find that Lincoln Life has not met its burden of establishing that its principal place of business lies outside of Pennsylvania. Therefore, this case shall be remanded to the Philadelphia County Court of Common Pleas.

B.     Attorneys' Fees and Costs

Plaintiff also seeks attorneys' fees and costs for Lincoln Life's improper removal. 28 U.S.C. § 1447(c) permits the Court to order payment of costs and any actual expenses, including attorneys' fees, incurred as a result of the removal. "Absent unusual circumstances, courts may

award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005).

While Lincoln Life has successfully removed a diversity case to this district, and while various district courts have stated that Lincoln Life's principal place of business rests outside of Pennsylvania, the cases Lincoln Life cites did not involve jurisdictional challenges wherein the respective court was required to determine Lincoln Life's nerve center. (<u>See</u> Def.'s Supp. Br. 11-12) (listing cases). In those cases, Lincoln Life's statement of principal place of business was simply taken at face value. Therefore, those cases do not render removal reasonable.

Further, for the reasons previously discussed, Lincoln Life's position is untenable in the face of clear Supreme Court precedent and undisputed testimony. Thus, we find that Lincoln Life did not have a reasonably objective basis for seeking removal.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand and request for attorneys' fees and costs are granted.

An appropriate Order follows.